1

2

3

4

5          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF WASHINGTON
6

7    CHRISTOPHER SCOTT WOLD,

8          Plaintiff,                        No.  2:15-CV-00049-RHW

9          v.
                                             **ORDER GRANTING PLAINTIFF'S**
10   CAROLYN W. COLVIN,                       **MOTION FOR SUMMARY**
     Acting Commissioner of Social            **JUDGMENT**
11   Security,

12         Defendant.

13         Before the Court are the parties' cross-motions for summary judgment, **ECF**

14   **Nos. 12 & 14**. Mr. Wold brings this action seeking judicial review, pursuant to 42

15   U.S.C. § 405(g), of the Commissioner's final decision, which denied his

16   application for Supplemental Security Income under Title XVI of the Social

17   Security Act, 42 U.S.C §§ 1381-1383f.  After reviewing the administrative record

18   and briefs filed by the parties, the Court is now fully informed. For the reasons set

19   forth below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and

20

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1**

1   **REMANDS** to the Commissioner for further proceedings in accordance with this

2   Order.

### I.     Jurisdiction

4          Mr. Wold applied for Supplemental Security Income benefits from the

5   Social Security Administration on April 12, 2012. AR 150-55. His alleged onset

6   date was August 6, 2005. *Id.* His application was initially denied June 7, 2012, and

7   on reconsideration July 5, 2012. TR 86-96.

8          A hearing with Administrative Law Judge ("ALJ") Marie Palachuk occurred

9   on October 2, 2013. AR 33-58. The ALJ issued an unfavorable decision on

10  October 25, 2013. AR 9-25. The Appeals Council denied Mr. Wold's request for

11  review on January 5, 2015, AR 1-6, making the ALJ's ruling the "final decision"

12  of the Commissioner.

13         Mr. Wold timely filed the present action challenging the denial of benefits,

14  on February 19, 2015. ECF No. 1. Accordingly, his claims are properly before this

15  Court pursuant to 42 U.S.C. § 405(g).

### II.    Sequential Evaluation Process

17         The Social Security Act defines disability as the "inability to engage in any

18  substantial gainful activity by reason of any medically determinable physical or

19  mental impairment which can be expected to result in death or which has lasted or

20  can be expected to last for a continuous period of not less than twelve months."  42

1  U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant shall be determined to be

2  under a disability only if the claimant's impairments are of such severity that the

3  claimant is not only unable to do his previous work, but cannot, considering

4  claimant's age, education, and work experience, engage in any other substantial

5  gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) &

6  1382c(a)(3)(B).

7      The Commissioner has established a five-step sequential evaluation process

8  for determining whether a claimant is disabled within the meaning of the Social

9  Security Act.  20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v.*

10  *Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

11      Step one inquires whether the claimant is presently engaged in "substantial

12  gainful activity."  20 C.F.R. §§ 404.1520(b) & 416.920(b).  Substantial gainful

13  activity is defined as significant physical or mental activities done or usually done

14  for profit.  20 C.F.R. §§ 404.1572 & 416.972.  If the claimant is engaged in

15  substantial activity, he or she is not entitled to disability benefits.  20 C.F.R. §§

16  404.1571 & 416.920(b).  If not, the ALJ proceeds to step two.

17      Step two asks whether the claimant has a severe impairment, or combination

18  of impairments, that significantly limits the claimant's physical or mental ability to

19  do basic work activities.  20 C.F.R. §§ 404.1520(c) & 416.920(c).  A severe

20  impairment is one that has lasted or is expected to last for at least twelve months,

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 3**

and must be proven by objective medical evidence.  20 C.F.R. §§ 404.1508-09 & 416.908-09.  If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required.  Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings").  If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits.  *Id.*  If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f).  If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends.  *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c).  To meet this

1    burden, the Commissioner must establish that (1) the claimant is capable of

2    performing other work; and (2) such work exists in "significant numbers in the

3    national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,*

4    676 F.3d 1203, 1206 (9th Cir. 2012).

5                          **III.    Standard of Review**

6          A district court's review of a final decision of the Commissioner is governed

7    by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited, and the

8    Commissioner's decision will be disturbed "only if it is not supported by

9    substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1144,

10   1158-59 (9th Cir. 2012) (citing § 405(g)).  Substantial evidence means "more than

11   a mere scintilla but less than a preponderance; it is such relevant evidence as a

12   reasonable mind might accept as adequate to support a conclusion." *Sandgathe v.*

13   *Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quoting *Andrews v. Shalala*, 53 F.3d

14   1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted).  In determining

15   whether the Commissioner's findings are supported by substantial evidence, "a

16   reviewing court must consider the entire record as a whole and may not affirm

17   simply by isolating a specific quantum of supporting evidence."  *Robbins v. Soc.*

18   *Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879

19   F.2d 498, 501 (9th Cir. 1989)).

20

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 5**

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and only briefly summarized here. Mr. Wold was twenty-six years old at the time of the hearing. AR 46. He is single and lives with family. *Id*. Mr. Wold did not graduate high school, and he was unable to obtain a GED. AR 46-47. He has never held a job. AR 48.

//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 6**

### V.    The ALJ's Findings

The ALJ determined that Mr. Wold was not disabled under the meaning of the Social Security Act since April 12, 2012, the date of his application. AR 12.

At **step one**, the ALJ determined Mr. Wold had not engaged in substantial gainful activity since April 12, 2012. AR 14.

At **step two**, the ALJ found Mr. Wold had the following severe impairments: cognitive disorder, not otherwise specified; dependent personality disorder; and alcohol and cannabis dependence. AR 14-15.

At **step three**, the ALJ found that Mr. Wold did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1. AR 15-16.

At **step four**, the ALJ found Mr. Wold had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: he is able to understand, remember, and carry out simple, routine, and repetitive tasks and instructions; he is able to maintain attention and concentration on simple, routine, and repetitive tasks for periods of two hours between regularly scheduled breaks; and he would need additional time  (defined as 10% more than the average worker) to adapt to changes in his work setting/routine. AR 16-20.

Mr. Wold has no past relevant work; thus, transferability of job skills is not an issue. AR 20.

At **step five**, the ALJ found that after considering Mr. Wold's age, education, work experience, and residual functional capacity, pursuant to the vocational expert's testimony that is consistent with the information contained in the Dictionary of Occupational Titles, there are other jobs that exist in significant numbers in the national economy that Mr. Wold can perform. AR 20-2. These include janitor/commercial cleaner, grocery bagger, and conveyor feeder. *Id.*

## VI.    Issues for Review

Mr. Wold argues that the Commissioner's decision is not free of legal error and unsupported by substantial evidence.  Specifically, Mr. Wold alleges the ALJ improperly discredited his symptom claims and failed to properly weigh the medical opinion evidence. AR 11-20.

## VII.   Discussion

### A. The ALJ improperly discredited Mr. Wold's symptom claims.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible.  *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008).  First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged.  *Id.*

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 8**

1    Second, if the claimant meets this threshold, and there is no affirmative evidence

2    suggesting malingering, "the ALJ can reject the claimant's testimony about the

3    severity of [his] symptoms only by offering specific, clear, and convincing reasons

4    for doing so." *Id*.

5        In weighing a claimant's credibility, the ALJ may consider many factors,

6    including, "(1) ordinary techniques of credibility evaluation, such as the claimant's

7    reputation for lying, prior inconsistent statements concerning the symptoms, and

8    other testimony by the claimant that appears less than candid; (2) unexplained or

9    inadequately explained failure to seek treatment or to follow a prescribed course of

10   treatment; and (3) the claimant's daily activities." *Smolen v. Chater*, 80 F.3d 1273,

11   1284 (9th Cir. 1996). When evidence reasonably supports either confirming or

12   reversing the ALJ's decision, the Court may not substitute its judgment for that of

13   the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). "General findings

14   are insufficient:  rather the ALJ must identify what testimony is not credible and

15   what evidence undermines the claimant's complaints."  *Lester v. Chater,* 81 F.3d

16   821, 834 (9th Cir. 1996) (as amended).

17       The ALJ determined that Mr. Wold's medically determinable impairments

18   could reasonably be expected to cause the alleged symptoms, but his statements

19   concerning the intensity, persistence, and limiting effects of these symptoms were

20   not entirely credible. AR 17. To support her decision, ALJ Palachuk referred to a

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 9**

lack of objective evidence to support the claims, inconsistency between Mr.

Wold's daily activities and his allegations, Mr. Wold's alleged lack of motivation

to work, and a lack of medical treatment for Mr. Wold's impairments. AR 17-18.

## 1. Objective evidence

The record demonstrates that Mr. Wold has cognitive disabilities. Mr. Wold

attended special education classes in school, AR 442, and he neither completed

high school nor was able to obtain his GED. AR 46-47.

There is some objective evidence that supports the argument that Mr. Wold

is precluded from maintaining gainful employment. Clinical psychologist Dr.

Debra D. Brown, PhD, examined Mr. Wold in March 2012 and determined that

"Mr. Wold is severely limited intellectually, and will never be able to successfully

maintain competitive employment." AR 451. Dr. Brown's opinion was based on

both examination and testing, and the validity of her opinion is evaluated later in

this Order. *See infra* pp. 22-23.

Further, a lack of objective evidence alone would be insufficient to sustain

an adverse credibility determination. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d

880, 883 (9th Cir. 2006) ("While an ALJ may find testimony not credible in part or

in whole, he or she may not disregard it solely because it is not substantiated

affirmatively by objective medical evidence.") Thus, the Court must look to the

1    remaining reasons provided by the ALJ to sustain this adverse credibility

2    determination.

3    **2. Daily activities**

4         ALJ Palachuck referred to several activities of Mr. Wold's daily living

5    activities in her opinion, including watching television, listening to music, and

6    playing games. AR 17. While he cannot drive a car, he is able to use public

7    transportation. *Id.*; AR 49. Mr. Wold is also able to shop, but he is usually

8    accompanied by his father. AR 17. He told one of his examining physicians that he

9    in unable to independently determine costs while shopping alone. AR 442.

10        A claimant need not be "utterly incapacitated to be eligible for benefits."

11   *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "Daily activities may be grounds

12   for an adverse credibility finding if a claimant is able to spend a substantial part of

13   his day engagd in pursuits involving the performance of physical functions that are

14   transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir.

15   2007)(internal quotations omitted).

16        The ALJ did not adequately explain how Mr. Wold's common activities are

17   inconsistent with Mr. Wold's allegations of mental impairments or how they were

18   transferable to a work setting. In *Orn*, the Ninth Circuit found that the claimant's

19   daily activities of reading, watching television, and coloring books were not

20   sufficiently transferable to a work setting to be a basis for an adverse credibility

finding. *Id.* Here, the ALJ failed to make any findings to demonstrate how the activities listed were transferable to warrant an adverse credibility finding. *Id.*; *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ offered only a blanket statement that the activities were inconsistent.

Furthermore, Mr. Wold does not offer any testimony about his daily activities that contradict his allegations of impairment. AR 45-53. In fact, he offers very little information about his own limitations—he states that he doesn't know why he never got a job after filling out applications. AR 52.

The ALJ failed to provide legally sufficient explanation as to how Mr. Wold's activities are inconsistent, and thus the Court finds this reasoning invalid.

**3. Motivation to work**

ALJ Palachuk's opinion strongly suggests that the primary reason for an adverse credibility determination was Mr. Wold's perceived lack of motivation to work. AR 17-18. The ALJ stated that Mr. Wold has "the attitude that there is no reason to be self-sufficient and get a job because the government would support him." AR 17. She cited to the fact he has "only ever applied for a job ONE time." *Id.* (emphasis in original).

1       The record does not support this finding. By his own testimony, Mr. Wold

2  has applied for work "a few times."[1] AR 48. He testified that he filled out

3  applications with help from his father, but he never got hired. *Id.* This is in direct

4  contrast to the statement that Mr. Wold has only applied for *one* job in his lifetime,

5  with one being specifically emphasized in the opinion. The Court finds nothing in

6  the record that contradicts Mr. Wold's testimony that he applied for multiple jobs.

7  While all experts noted that he has no past work history, this does not necessarily

8  imply that he has no interest in working. *See* AR 450-51, 457, 472.

9       Moreover, the record actually does support a finding that Mr. Wold did have

10 professional ambitions. In 2004, he told Dr. Andrew B. Forsyth, PhD, during a

11 mental examination that he wanted to operate a trading card shop that specialized

12 in cards of animated television programs. AR 457. In 2012, during a separate

13 examination, he told Dr. Brown that he aspired to be an artist. AR 451. Regardless

14 of the actual probability of success in these careers, these expressions contradict

15 the finding that he lacked all motivation to work and expected to subsist entirely on

16 government benefits.

17      Finally, the ALJ's reasoning that Mr. Wold lacks motivation to work

18 because his family receives government benefits is also unsupported by the record.

19

20

---

[1] In briefing, the Commissioner references this statement, ECF No. 14 at 12, which recognizes that Mr. Wold did, in fact, attempt more than once to find work and contradicts the ALJ's statement.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 13**

AR 17. While the record indicates that his family are disabled, their disabilities and benefits are not at issue. AR 450, 456. Additionally, nothing in Mr. Wold's testimony at his hearing, nor his doctors' notes, support the ALJ's assertion that his family's disabilities or attitudes toward social services drove his claim.

### 4. Lack of mental health treatment

Finally, the ALJ reasoned that because Mr. Wold had not sought mental health treatment, his problems were not severe enough to motivate him to seek treatment, and therefore "it is difficult to accept his assertion that they are disabling." AR 17-18.

In a credibility determination, an ALJ may consider minimal treatment with regard to severity of symptoms. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 742, 750-51 (9th Cir. 1999). However, the Ninth Circuit has held that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

In Mr. Wold's case, poor insight and judgment are hallmarks of his condition. Mr. Wold's documented impairments are largely related to his cognitive skills. AR 447, 451-52, 458-65, 473-74. Dr. Brown, an examining doctor was so concerned by his cognitive impairments that she recommended an MRI of his brain to determine whether he may have a growth in the left hemisphere of his brain, due

to the "huge disparity between his verbal and non-verbal intellectual scores." AR 451. This same doctor noted that Mr. Wold "demonstrated little insight into his own condition. His judgment [as revealed by objective medical testing] is poor." AR 452. Mr. Wold's own testimony shows little insight into his impairments and abilities. AR 48.

Because the record strongly suggests that Mr. Wold's failure to seek treatment is likely related to his cognitive impairments and general lack of insight regarding his impairments, the Court finds that a lack of mental health treatment alone is insufficient to sustain an adverse credibility finding.

## 5. Remedy

The ALJ did not provide legally sufficient reason to support an adverse credibility determination. When an ALJ improperly rejects a claimant's testimony regarding his limitations, and the claimant would be found disabled if the testimony was credited, the court will not remand "solely to allow the ALJ to make specific findings regarding that testimony." *Lester*, 81 F.3d at 834 (*quoting Varney v. Sec. of Health and Human Serv.*, 859 F.2d 1396, 1401 (9th Cir. 1988)(*Varney II*)). That, however, is not the case here.

The bulk of this case is determined by medical opinion evidence. Mr. Wold's testimony is limited and does little to glean light on the level of his impairment. AR 45-52. The Court cannot say that Mr. Wold is disabled if his

1  testimony is credited as true. Thus, the error is relevant only so far as when his

2  subjective symptom testimony provides foundation for medical opinion evidence.

3  Nevertheless, on remand, Mr. Wold's subjective symptom claims will be credited

4  as true.

5  **B. The ALJ improperly considered some of the medical opinion evidence.**

6      The ALJ is the "final arbiter" with regard to medical evidence ambiguities,

7  including differing physicians' opinions. *Tommasetti,* 533 F.3d at 1041. The Ninth

8  Circuit has distinguished between three classes of medical providers in defining the

9  weight to be given to opinions: (1) treating providers; (2) examining providers; and

10  (3) non-examining providers. *Lester,* 81 F.3d at 830. A treating or examining

11  provider's opinion is generally given more weight than a non-examining provider.

12  *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining

13  provider's opinion may not be rejected unless "clear and convincing" reasons are

14  provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it

15  may only be discounted for "specific and legitimate reasons that are supported by

16  substantial evidence in the record." *Id*. at 830-31.

17      **1. Dr. Jackline's opinion**

18      Dr. William H. Jackline, EdD, examined Mr. Wold on December 8, 2010,

19  and provided a report. AR 441. The ALJ afforded "little weight" to Dr. Jackline's

20  assessment that Mr. Wold showed "moderately impaired social skills" because

"[t]here is no basis in the evidence of record to limit the claimant's social interactions." AR 18. This unsupported statement is an insufficient explanation for affording little weight to an examining doctor's opinion.

An ALJ may provide the requisite specific and legitimate reasons to reject an opinion by setting out a detailed and thorough summary of the facts and conflicting evidence, and then explaining his interpretation. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)(*citing Magallanes v. Bowen*, 8814 F.2d 747, 751 (9th Cir. 1989). The ALJ is not permitted merely to offer her own conclusions without a thorough explanation as to why that conclusion, rather than the treating doctor's, is correct. *Reddick*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

Dr. Jackline performed an examination on Mr. Wold and used his professional training to determine Mr. Wold's limitations. AR 441-48.  In addition, Dr. Jackline performed objective testing and used these results to form his opinion. AR 446-47. The record demonstrates a lengthy, thoughtful assessment of Mr. Wold's condition by Dr. Jackline. AR 441-48. Dr. Jackline's report, particularly his Medical Source Statement that "information obtained during today's appointment suggested that, compared to others his age, this gentleman would tend to show moderately impaired interactive skills . . ." was based both on clinical

observations and objective testing. AR 448. The ALJ erred in rejecting Dr.

Jackline's opinion.

### 2. Dr. Arnold

Dr. John F. Arnold, PhD, examined Mr. Wold on September 6, 2013. AR
471. Like Dr. Jackline, Dr. Arnold performed objective medical testing, as well as
relied on his clinical observations to create his report. AR 471-78.

The ALJ afforded "little weight" to Dr. Arnold's opinion for eight separate
reasons: (1) he did not see Mr. Wold until one week before the hearing; (2) he did
not "relate his opinion back to the alleged onset date"; (3) he summarized the
results of the objective testing rather than listing the results; (4) he reviewed only
school Individualized Education Program ("IEP") records and Dr. Jackline's
report; (5) he relied on an inaccurate substance abuse history; (6) his diagnoses
were all "by history" except for his diagnosis of personality disorder; (7) his
functional ratings were inconsistent with the record; and (8) his functional ratings
were inconsistent with his own testing. AR 18. When parsed independently, the
Court finds all of these reasons to be legally insufficient.

### a. Time between examination and hearing

The ALJ provided a vague statement that the examination was too close to
the hearing date, but failed to explain why the timing of the examination would be
a legitimate ground for rejecting Dr. Arnold's opinion. The opinion was the result

of a valid examination and included objective testing, and it could be considered

nothing but timely. AR 471-78. Further, Dr. Arnold noted that Mr. Wold's "efforts

appeared in earnest." AR 472. There is nothing to suggest the results of the testing

or Dr. Arnold's opinion are invalid.

**b. Longitudinal perspective of the opinion**

Dr. Arnold's opinion does include a history of Mr. Wold's limitations,

which demonstrate that they have existed for some time. AR 471-78.  Dr. Arnold

reviewed Mr. Wold's IEP records, which extend back several years. AR 473.

While Dr. Arnold does not specifically mention the alleged onset date, his report

and review of records sufficiently demonstrate that he considered a significant

period of time and that Mr. Wold's limitations are long-standing.

**c. Interpretation of objective test results**

With regard to Dr. Arnold's summary of the objective testing results, neither

the Commissioner nor the ALJ cite to any requirement that a doctor cannot

interpret the results in lieu of providing the hard data. Dr. Arnold is a trained

mental health professional, and the Commissioner has not challenged his

credentials. The Court finds it is reasonable to presume he is qualified to interpret

the results of the objective testing he administered.

//

//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 19**

### d. Records reviewed by Dr. Arnold

The ALJ noted that Dr. Arnold only reviewed the IEP records and Dr. Jackline's report, which, in ALJ Palachuk's opinion, was insufficient to base a valid opinion. AR 18, 473. Dr. Arnold was an examining doctor, which, by Ninth Circuit law, should be given great deference, absent specific and legitimate reasons for doing so. *Lester,* 81 F.3d at 830. Dr. Arnold actually examined and tested Mr. Wold, and he was able to form an opinion based on trained clinical observations and test results.

### e. Inconsistent information regarding drug and alcohol use

The ALJ and the Commissioner argue that Mr. Wold provided inconsistent information to Drs. Arnold and Jackline regarding his use of alcohol and marijuana. AR 18; ECF No. 14 at 16. The record, however, does not corroborate this.

The doctors examined Mr. Wold nearly three years apart, and none of the information from either doctor is inconsistent.

Dr. Jackline examined Mr. Wold on December 8, 2010, AR 441, and Dr. Arnold examined him on September 6, 2013. AR 471. Mr. Wold told Dr. Jackline that he smoked marijuana three-four months prior to the examination, which would be approximately August-September of 2013. AR 442. Mr. Wold also stated that

he last drank alcohol over one year before, which would be approximately December of 2009. *Id.*

Dr. Arnold's records state that Mr. Wold has not used any drugs, including cannabis, in the prior twelve months, and he had not drank alcohol since New Year's Eve. AR 472. These dates do not overlap or in any way contradict the information provided to Dr. Jackline.

### f. Diagnosis method

The ALJ stated in her opinion that Dr. Arnold diagnosed all of Mr. Wold's impairments "by history," other than his personality disorder. AR 18. This again is unsupported by the record. Dr. Arnold's note specifically indicate that these diagnoses were also diagnosed by record. *Id.* The ALJ fails to offer an explanation as to why other doctors' opinions, based entirely on the record, such as Dr. Margaret Moore, the non-examining medical expert, were sufficient to form an opinion, but Dr. Arnold's review of records is insufficient, particularly in light of Dr. Arnold's formal examination of Mr. Wold.

### g. Inconsistency of functional ratings

The ALJ finally asserted that the functional ratings Dr. Arnold assigned to Mr. Wold were inconsistent with the record and his own testing. AR 18. Dr. Arnold both performed a clinical examination and objective testing on Mr. Wold. AR 471-78. He provided a lengthy report that offers reasoned results for his

1    findings. *Id.* They are neither "brief, conclusory, [nor] inadequately supported by

2    clinical findings." *Thomas v. Barnhart*, 278 F.2d 947, 957 (9th Cir. 2002). If the

3    ALJ believed that they were unsupported, she needed to provide more than a

4    conclusory statement in light of the reasoned report provided by Dr. Arnold.

5         In conclusion, the Court finds that the ALJ did not provide the requisite

6    specific and legitimate reasons, supported by substantial evidence in the record, to

7    reject treating provider Dr. Arnold's opinion.

8    **3. Dr. Brown**

9         Dr. Brown performed an examination on March 8, 2012, and prepared a

10   report for the Department of Social and Health Services. AR 449-54. Dr. Brown

11   found Mr. Wold to be "severely mentally challenged" and determined he had

12   borderline intellectual function. AR 449-50. Dr. Brown was so concerned about the

13   disparity between Mr. Wold's verbal and non-verbal intellectual scores that she

14   recommended an MRI of his brain to determine if there was a growth in the left

15   hemisphere of his brain. AR 451. Dr. Brown's residual capacity assessment

16   indicated that Mr. Wold would never be able to successfully maintain competitive

17   employment. *Id.*

18        The ALJ gave "little weight" to Dr. Brown's opinion. AR 19. The ALJ

19   opined that the limitations assessed by Dr. Brown were "inconsistent with her own

20   testing." *Id.* The ALJ cites to the full scale IQ analysis of 80, as well as the results

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 22**

1    of objective testing. *Id.* The testing did indicate normal ranges overall for Mr.

2    Wold without evidence of malingering; however, the tests also indicated, as Dr.

3    Brown referred to in her report, a gross disparity between verbal and non-verbal

4    scores, which was of significant concern to Dr. Brown. AR 453-54.

5    　　　An ALJ is not permitted to selectively review a doctor's opinion and use

6    only the portions that support their conclusion. *See Holohan v. Massanari*, 246

7    F.3d 1195, 1208 (9th Cir. 2001)(ALJ was not to permitted to selectively quote

8    from a doctor's treatment records to demonstrate a conflict with the claimant's

9    testimony). In this case, ALJ Palachuk determined that Dr. Brown's opinion was

10   inconsistent with her opinion because the ALJ looked exclusively at the overall

11   total scores without regard to the specific issues of significant concern that Dr.

12   Brown noted in her report.

13   　　　While issues reserved to the Commissioner (such as determination of

14   disability) are not entitled to controlling weight, the information contained within

15   medical source opinions on these issues cannot be ignored. 20 C.F.R. § 416.927(e).

16   Thus, while the ALJ was not required to accept Dr. Brown's opinion that Mr. Wold

17   could not maintain competitive employment, the ALJ was required to consider the

18   facts of the opinion, including what effects, if any, the gross disparity in verbal and

19   non-verbal intellectual scores had on Mr. Wold's functional limitations.

20   //

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT** ~ 23

**4.  Dr. Kakar**

Finally, the ALJ gave "little weight" to the opinions of the state evaluator Dr. Sunil Kakar, PsyD, from the Department of Social and Health Services.[2] AR 19. Dr. Kakar reviewed the medical reports of Drs. Brown and Forsyth and created a report that detailed Mr. Wold's mental severity assignment and mental functional assessment. AR 468-470. Dr. Kakar listed numerous marked limitations, but only moderate limitations with the ability to perform simple tasks and make simple work related decisions. AR 469. This is consistent with the record, including Dr. Jackline, who opined Mr. Wold could adequately complete simple tasks. AR 448. While the ALJ opined that this check-box format lacked objective evidence to support it, AR 20, the record generally supports Dr. Kakar's assessment.

The other reasons provided by the ALJ for rejecting Dr. Kakar's report are also unpersuasive. First, the ALJ stated that Dr. Kakar's assessment was given little weight because it was "just a medical reviewer and not based on an examination." This is internally inconsistent because the ALJ gave significant weight given to the opinion of Dr. Moore, also a non-examining doctor. AR 18.

---

[2] In his briefing, Mr. Wold challenges "state evaluators," but he only cites to those which received "little weight." ECF No. 12 at 19. The only Department of Social and Health Services opinion that received "little weight" was Dr. Kakar, and Mr. Wold cites only to the reasoning provided by the ALJ for rejection with relation to this opinion. AR 19-20; 468-70. Dr. Forsyth's opinion, which was also prepared for the Department of Social and Health Services, was given "some weight," and Mr. Wold appears not to challenge this opinion. *See* ECF No. 12 at 10-20. Therefore, the Court's analysis is focused on Dr. Kakar and not Dr. Forsyth's opinion.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 24**

1    Next, the ALJ incorrectly stated that Dr. Kakar's review was of nothing

2    more than Dr. Brown's report. AR 19. This is factually incorrect. Dr. Kakar's

3    report indicated that it was based on the reports of Drs. Brown and Forsyth. AR

4    468. These were both examining doctors, but they performed their examinations

5    nearly eight years apart, *id.*, which provided a significant longitudinal perspective

6    for Dr. Kakar to consider.

7        The ALJ also reasoned that Dr. Kakar's opinion deserved less weight

8    because the evaluations were largely based on Mr. Wold's subjective testimony

9    and completed for the purpose of discerning state disability, for which Mr. Wold

10   had the incentive to overstate his symptoms and complaints. AR 19. As previously

11   discussed, the ALJ improperly evaluated Mr. Wold's credibility. Thus, his

12   credibility would have no bearing on the reasonableness of Dr. Kakar's reports.

13   Further, the purpose for which reports are prepared is not a proper reason to reject

14   the report. *Lester*, 81 F.3d at 832. Likewise, even though the Department of Social

15   and Health Services uses different standards for determining disability, this does

16   not mean that the entire opinion should be simply disregarded.

17   **C. Remedy**

18       The Court has the discretion to remand the case for additional evidence and

19   findings or to award benefits.  *Smolen*, 80 F.3d at 1292.  The Court may award

20   benefits if the record is fully developed and further administrative proceedings

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 25

would serve no useful purpose.  *Id.*  Remand is appropriate when additional administrative proceedings could remedy defects.  *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).  In this case, the Court finds that while there were too many issues improperly considered by the ALJ, Mr. Wold has not demonstrated that immediate payment of benefits is warranted. Thus, the Court finds that remand for further proceedings consistent with this order is required.

On remand, Mr. Wold's testimony shall be credited as true, as well as the opinions of Drs. Jackline, Arnold, Brown, and Kakar. The ALJ need not reassess the opinion of Dr. Forsyth or any other information in the record except as it pertains to the opinions listed. Upon crediting these opinions, the ALJ shall recalculate the residual functional capacity, considering all impairments, and then evaluate, based on this updated residual functional capacity, Mr. Wold's ability to perform work available in the national economy. The ALJ is recommended to consult with a vocational expert to the extent this will be helpful.

## VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is not supported by substantial evidence and contains legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3.  The District Court Executive is directed to enter judgment in favor of Plaintiff and against Defendant.

4. This matter is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

IT IS SO ORDERED. The District Court Executive is directed to enter this Order, forward copies to counsel and close the file.

DATED this 12th day of May, 2016.


*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge